UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

EMILY GRANT DECARLO, ADMINISTRATRIX
 OF THE ESTATE OF ANGEL DECARLO,

       Plaintiff,

v.

CITY OF HOPEWELL, VIRGINIA, a
 Municipal Corporation,

Civil Action No. _____ 3:21cv598

and

CITY OF HOPEWELL, VIRGINIA
 DETECTIVE CAMERON LIST (individually),

**JURY TRIAL DEMANDED**

and

DOE(S) 1 – 5, inclusive,

       Defendants.

_____/

**COMPLAINT FOR DAMAGES FOR VIOLATION OF CIVIL
RIGHTS AND WRONGFUL DEATH AND DEMAND FOR JURY TRIAL**

Plaintiff, EMILY GRANT DECARLO, ADMINISTRATRIX OF THE ESTATE OF

ANGEL DECARLO ("MS. DECARLO") for her Complaint against the CITY OF HOPEWELL,

VIRGINIA (the "CITY") and City of Hopewell, Virginia Police Officer, CAMERON LIST

("DETECTIVE LIST), and DOE(S) 1 – 5 (collectively the "DOE(S)"), inclusive, alleges as

follows:

**INTRODUCTION**

1.    This civil rights action seeks compensatory and punitive damages from the

Defendants for violating various rights under the United States Constitution and state law in

connection with the fatal police shooting of the decedent, Angel DeCarlo.

2.      In the United States of America, there is an epidemic of fatal police shootings against people of color.  Julie Tate et al., Fatal Force, THE WASH. POST, https://www.washingtonpost.com/graphics/investigations/police-shootings-database/ (last updated Mar. 31, 2020).

3.      Indeed, African American communities are more heavily policed than other communities.

4.      Since on or about January 1, 2016, the police have fatally shot approximately 1,000 people annually.  The vast majority of these people were armed or otherwise considered dangerous.

5.      African Americans account for about 23% of the people shot.  *Id.*

6.      But African Americans make up about 13% of the U.S. population.  *Id.*

7.      The decedent, Ms. Angel DeCarlo (the "DECEDENT"), was an African American, who was carrying[1] a gun when DETECTIVE LIST fatally shot her on December 18, 2018.

8.      At that time, DETECTIVE LIST killed the DECEDENT. She did not pose a threat to anyone, especially DETECTIVE LIST.  Rather, the DECEDENT showed signs of mental distress and/or suffering.

9.      The DeCarlo shooting was the second time DETECTIVE LIST shot and killed someone in the alleged performance of his duties as a Hopewell Police Officer.  This shooting was the third time that a Hopewell Police Officer has shot and killed someone.  Hopewell's kill ratio is 94% higher than other Virginia Police Departments.  See generally https://policescorecard.org/va/police-department/hopewell.

---

[1]      Clearly, there is nothing illegal about carrying a gun in the Commonwealth of Virginia.

10.     DETECTIVE LIST even received an award for his first killing. On or about September 19, 2017, the Virginia Association of Chiefs of Police and Foundation recognized DETECTIVE LIST for fatally shooting someone in 2016.

11.     While accepting the award, DETECTIVE LIST said: "When I was on my way to the scene, I was praying that God would keep me calm during the incident, because I knew it was going to be traumatic . . . When I got there, a feeling of calmness immediately overcame me, and I used that along with my prior training to handle the situation successfully. I'm fortunate that my training was comprised of several extremely similar scenarios, which instilled in me the skill set and demeanor necessary for the situation."   Kelsey Reichenberg, *Detective Cameron List recognized for valor while responding to stabbing in 2016*, The Progress-Index (September 24, 2017),          Https://www.progress-index.com/news/20170924/hopewell-police-officer-receives-highest-vacp-award.

12.     According to the United States Census Bureau, Hopewell's population was 22,591 in 2010.  In the present circumstance, there are plenty of law enforcement officers in much larger cities and metropolitan areas who have never even drawn their gun – let alone shot and killed someone twice.

13.     After DETECTIVE LIST fatally shot MS. DECARLO on December 18, 2018, the City placed him on administrative leave – where he remains to this day.

## JURISDICTION

14.     This Honorable Court has subject matter jurisdiction of this case under 28 U.S.C. § 1331 federal question jurisdiction because Plaintiff brings this action under 42 U.S.C. § 1983 to vindicate rights guaranteed by the Constitution of the United States. The Court has supplemental

jurisdiction to adjudicate Plaintiff's claims arising under the laws of the Commonwealth of Virginia.

## **PARTIES**

15.     At all relevant times, the DECEDENT was an individual residing in the City of Hopewell, Virginia.

16.     Plaintiff, MS. DECARLO is an individual residing in the City of Hopewell, Virginia and was at all relevant times the natural mother of the DECEDENT.  MS. DECARLO sues in her individual capacity and as the Administratrix of her daughter's estate. She seeks wrongful death damages under federal and state law.

17.     At all relevant times, Defendant CITY OF HOPEWELL, VIRGINIA (the "CITY") is and was duly organized as a municipal corporation under the laws of the Commonwealth of Virginia.  At all relevant times, the CITY was the employer of Defendants DETECTIVE LIST and DOE(S) 1 - 5, who were officers with the City's Police Department.

18.     At all relevant times, DETECTIVE LIST is a resident of the Commonwealth of Virginia.  DETECTIVE LIST is sued in his individual capacity for compensatory and punitive damages.

19.     At all relevant times, Defendant DETECTIVE LIST and DOE(S) 1 – 5 were duly appointed officers and/or employees and/or agents of the CITY, subject to oversight and supervision by the CITY's elected and nonelected officials.

20.     In performing the acts described herein and failing to perform other acts described herein, Defendants DETECTIVE LIST and DOE(S) 1 – 5 were acting on the implied and actual permission and consent of the CITY.

21.     At all times mentioned herein, the CITY defendant had the legal duty to oversee and supervise the hiring, conduct and employment of each and every one of its employees, including DETECTIVE LIST and DOE(S) 1 – 5.

22.     The true names of defendants DOE(S) 1 – 5, inclusive, are unknown to MS. DECARLO, who therefore sues these defendants by fictitious names. MS. DECARLO will seek leave to amend this complaint to show the true names and capacities of these defendants when they have been ascertained. Each of the fictitiously named defendants are responsible in some manner for the conduct and liabilities alleged in this Complaint.

23.     On May 28 2019, MS. DECARLO served notice of her claims against the CITY pursuant to Va. Code § 15.2-209.

24.     The CITY never responded.

## FACTS COMMON TO ALL CLAIMS OF RELIEF

25.     MS. DECARLO repeats and re-alleges the allegations in paragraphs 1 through 24 of her Complaint as set forth verbatim.

26.     On Tuesday December 18, 2018, sometime shortly after 11:09 a.m., the DECEDENT was approached by certain CITY police officers as she was walking on Elm Street in the CITY.

27.     These officers were responding to a 911 call that allegedly involved the DECEDENT.

28.     At that time, the DECEDENT, who was diagnosed as being mentally ill, was walking down the street cavalierly carrying her clutch purse and a gun.

29.     While she walked, the DECEDENT was not doing anything suspicious or which

would raise alarm that she was a danger to anyone.  Here, the DECEDENT exhibited signs of being under mental duress and/or suffering.

30.     While she walked, DETECTIVE LIST suddenly appeared behind the DECEDENT in an unmarked police vehicle.

31.     Before he exited this vehicle, DETECTIVE LIST drew his weapon.  This was a clear violation of the City's Police Department's General Order relating to the display and brandishing of weapons.

32.     DETECTIVE LIST then went around his vehicle and approached the DECEDENT. This "cowboy" stunt was a violation of clearly established police practices and/or guidelines.

33.     By doing so, DETECTIVE LIST placed himself in harm's way by deliberately eliminating his only source of cover, *i.e.* his police car.

34.     DETECTIVE LIST, who was not in uniform, then demanded that the DECEDENT "STOP."

35.     DETECTIVE LIST, who was in plain clothes, repeated "STOP" several times.

36.     During this entire time, DETECTIVE LIST never identified himself as a police officer.

37.     The DECEDENT kept cavalierly walking away from DETECTIVE LIST.

38.     Again, this behavior demonstrates that the DECEDENT, who was mentally ill, was under some form of mental duress and/or anxiety.

39.     Despite her condition, neither DETECTIVE LIST nor any of the DOE(S) 1 – 5 summoned the City's Crisis Negotiation Team.

40.     While she walked away from DETECTIVE LIST, he shot the DECEDENT causing

her serious physical injury and killing her.

41.     This shooting violated the City's Police Department's General Order relating to Use of Force.  Moreover,

42.     After he shot the DECEDENT, DETECTIVE LIST yelled "SHIT."

43.     He then yelled "FUCK."

44.     At the time of the shooting, the DECEDENT posed no immediate threat of death or physical injury to DETECTIVE LIST, or any other person.  Again, the DECEDENT was cavalierly walking down a street exhibiting signs of mental duress, anxiety and/or disorder.

45.     DETECTIVE LIST did not give the DECEDENT a verbal warning that deadly force would be used before shooting her, despite the fact that it was feasible for him to do so.

46.     DETECTIVE LIST did not issue appropriate commands to the DECEDENT before shooting her.

47.     The DECEDENT never verbally threatened anyone before being fatally shot by DETECTIVE LIST.

48.     The DECEDENT did not physically threaten anyone before being fatally shot by DETECTIVE LIST.

49.     Moreover, DETECTIVE LIST did not personally observe the DECEDENT commit any crime and there was no information that the DECEDENT had physically injured anyone.

50.     DETECTIVE LIST shot the DECEDENT even though she did not pose an immediate threat of death or serious bodily injury to him, or anyone else and there were other less than lethal options available.  DETECTIVE LIST did not show a reverence for human life.  He

was and remains responsible for the killing the DECEDENT when this was not an immediate defense of life situation.

51.     After shooting the DECEDENT, DETECTIVE LIST did not provide, or summon timely medical attention for the DECEDENT, who was bleeding profusely and suffering from serious injuries.

52.     Rather, one of the DOE(S) 1 – 5 told DETECTIVE LIST to "walk away."

53.     None of the DOE(S) 1 – 5 attempted to provide, or summon timely medical attention for the DECEDENT, who was bleeding profusely and suffering from serious injuries.

54.     Rather, one of the DOE(S) 1 – 5 just simply walked up to the DECEDENT where she was laying on the ground and kicked the gun that the DECEDENT cavalierly was carrying away from her bleeding body.

## COUNT I

### Unreasonable Search and Seizure – Detention and Arrest (42 U.S.C. § 1983)

55.     MS. DECARLO repeats and re-alleges the allegations in paragraphs 1 through 54 of her Complaint as if set forth verbatim.

56.     DETECTIVE LIST caused the DECEDENT to be detained and he attempted to arrest her in violation of her right to be secure in her person against unreasonable searches and seizures as guaranteed to the DECEDENT under the Fourth Amendment to the United States Constitution and applied to State Actors by the Fourteenth Amendment.

57.     As a result of his conduct, DETECTIVE LIST is liable for the DECEDENT's injuries, because he shot and killed the DECEDENT without just cause in violation of her rights guaranteed to her under the U.S. Constitution.

58.     DETECTIVE LIST attempted to detain the DECEDENT without reasonable suspicion and attempted to arrest her without probable cause.

59.     The conduct of DETECTIVE LIST was willful, wanton, malicious and done with reckless disregard for the rights and safety of the DECEDENT and therefore warrants the imposition of punitive damages in his individual capacity.

60.     Accordingly, DETECTIVE LIST is liable to MS. DECARLO for compensatory and punitive damages, including both survival damages and wrongful death damages under, 42. U.S.C § 1983.

61.     MS. DECARLO also seeks attorney fees under this Count.

## COUNT II

### Unreasonable Search and Seizure – Excessive Force (42 U.S.C. § 1983)

62.     MS. DECARLO repeats and re-alleges the allegations paragraphs 1 through 61 of her Complaint as if set forth verbatim.

63.     DETECTIVE LIST's unjustified shooting deprived the DECEDENT of her right to be secure in her person against unreasonable searches and seizures as guaranteed to the DECEDENT under the Fourth Amendment to the United States Constitution and applied to state actors by the Fourteenth Amendment.

64.     The unreasonable use of force by DETECTIVE LIST deprived the DECEDENT of her right to be secure in her person against unreasonable searches and seizures as guaranteed to the DECEDENT under the Fourth Amendment to the United States Constitution and applied to state actors by the Fourteenth Amendment.

65.     As a result of the unreasonable and unjustified actions of DETECTIVE LIST, the

DECEDENT suffered extreme mental and physical pain and suffering, loss of enjoyment of life and eventually suffered a loss of life and of earning capacity.  MS. DECARLO has also been deprived of the life-long love, companionship, comfort, support, society, care, and sustenance of the DECEDENT, and will continue to be so deprived for the remainder of her natural life.

66.     As a result of his conduct, DETECTIVE LIST is liable for the DECEDENT's injuries.

67.     The use of deadly force was excessive because this was not an immediate defense of life situation. DETECTIVE LIST did not give a verbal warning that deadly force would be used despite it being feasible to do so, and there were other reasonable options available other than shooting and killing the DECEDENT.

68.     Furthermore, at the time DETECTIVE LIST shot the DECEDENT, she was walking away from him and not threatening him in any way.

69.     This use of deadly force was excessive and unreasonable under these circumstances as the DECEDENT did not pose a threat to anyone, especially DETECTIVE LIST.  DETECTIVE LIST's actions deprived the DECEDENT of her right to be free from unreasonable searches and seizures under the Fourth Amendment and applied to state actors by the Fourteenth Amendment.

70.     The conduct of DETECTIVE LIST was willful, wanton, malicious and done with reckless disregard for the rights and safety of the DECEDENT and therefore warrants the imposition of punitive damages in his individual capacity.

71.     Accordingly, DETECTIVE LIST is liable to MS. DECARLO for compensatory and punitive damages, including both survival damages and wrongful death damages under, 42. U.S.C § 1983.

72.     MS. DECARLO also seeks attorney fees under this Count.

## COUNT III

**Unreasonable Search and Seizure – Denial of Medical Care (42 U.S.C. § 1983)**

73.     MS. DECARLO repeats and re-alleges the allegations paragraphs 1 through 72 of her Complaint as if set forth verbatim.

74.     The denial of medical care by Defendant DETECTIVE LIST and DOE(S) 1 – 5 deprived the DECEDENT of her right to be secure in her person against unreasonable searches and seizures as guaranteed to the DECEDENT under the Fourth Amendment to the United States Constitution and applied to state actors by the Fourteenth Amendment.

75.     As a result, the DECEDENT suffered extreme mental and physical pain and suffering and eventually suffered a loss of life and earning capacity.

76.     MS. DECARLO has also been deprived of the life-long love, companionship, comfort, support, society, care, and sustenance of the DECEDENT, and will continue to be so deprived for the remainder of her natural life.  MS. DECARLO is also claiming funeral and burial expenses and a loss of financial support.

77.     After DETECTIVE LIST shot the DECEDENT, DETECTIVE LIST and/or DOE(S) 1 – 5 did not timely summon or provide timely medical attention for the DECEDENT, who was bleeding profusely and had obvious serious injuries.

78.     Rather, DETECTIVE LIST walked away after being told to do so by one of DOE(S) 1 – 5.

79.     Meanwhile, one of the DOE(S) 1 – 5 walked up to the DECEDENT where she was laying in the street bleeding and kicked away the gun she had been carrying.

80.     This Defendant did not even bother to check to see if the DECEDENT had a pulse.

81.     None of the Defendants did so.

82.     DETECTIVE LIST's and DOE(S) 1 – 5's conduct was willful, wanton, malicious, and done with reckless disregard for the rights and safety of the DECEDENT and therefore warrants the imposition of exemplary and punitive damages in their individual capacity.

83.     MS. DECARLO brings this claim as successor-in-interest to the DECEDENT and seeks both survival and wrongful death damages for the violation of DECEDENT's rights.

84.     MS. DECARLO also seeks attorney fees under this Count.

## COUNT IV

### Substantive Due Process (42 U.S.C. § 1983)

85.     MS. DECARLO repeats and re-alleges the allegations in paragraphs 1 through 84 of her Complaint as if set forth verbatim.

86.     MS. DECARLO has a cognizable interest under the Due Process Clause of the Fourteenth Amendment of the United States Constitution to be free from state actions that deprive her of life, liberty, or property in such a manner as to shock the conscience, including but not limited to, unwarranted state interference in her familial relationship with her daughter, the DECEDENT.

87.     As a result of the excessive force by DETECTIVE LIST, the DECEDENT died. Therefore, MS. DECARLO has been deprived of her constitutional right of familial relationship with the DECEDENT.

88.     DETECTIVE LIST, acting under color of state law, thus violated MS. DECARLO's Fourteenth Amendment rights to be free from unwarranted interference with her

familial relationship with the DECEDENT.

89.    The aforementioned actions of DETECTIVE LIST, along with other undiscovered conduct, shock the conscience, in that he acted with deliberate indifference to the constitutional rights of the DECEDENT and MS. DECARLO with the purpose to harm unrelated to any legitimate law enforcement objective.

90.    DETECTIVE LIST acting under color of state law, thus violated the Fourteenth Amendment rights of the DECEDENT and MS. DECARLO.

91.    As a direct and proximate cause of DETECTIVE LIST's acts, MS. DECARLO suffered extreme and severe mental anguish and pain and has been injured in mind and body.  She has also been deprived of the life-long love, companionship, comfort, support, society, care and sustenance of the DECEDENT, and will continue to be so deprived for the remainder of her natural life. MS. DECARLO also seeks funeral and burial expenses and loss of financial support.

92.    As a result of his conduct, DETECTIVE LIST is liable for the DECEDENT's injuries because such acts were an integral part in the denial of due process.

93.    DETECTIVE LIST's conduct was willful, wanton, malicious, and done with reckless disregard for the rights and safety of the DECEDENT and MS. DECARLO and therefore warrants the imposition of exemplary and punitive damages in his individual capacity.

94.    MS. DECARLO brings this claim individually seeking wrongful death damages for the violation of her rights.

95.    MS. DECARLO also seeks attorney fees under this Count.

## COUNT V

**Municipal Liability for Unconstitutional Custom or Policy (42 U.S.C. § 1983)**

96.    MS. DECARLO repeats and re-alleges the allegations in paragraphs 1 through 97 of her Complaint as if set forth verbatim.

97.    At the time he shot and killed the DECEDENT, the City and its supervising and managerial employees, agents, and representatives knew that DETECTIVE LIST had previously shot and killed someone else while in the scope of his employment with the CITY.

98.    At the time he shot and killed the DECEDENT, the City and its supervising and managerial employees, agents, and representatives knew that DETECTIVE LIST received an award for the previous shooting.

99.    Indeed, the City and its supervising and managerial employees, agents, and representatives even praised DETECTIVE LIST receiving this award.

100.    After publicly praising DETECTIVE LIST for killing someone else, the CITY and its supervising and managerial employees, agents, and representatives then placed DETECTIVE LIST back into a position where DETECTIVE LIST would have an opportunity to kill again.

101.    DETECTIVE LIST did so.  DETECTIVE LIST accounts for approximately 67% of the CITY's fatal police shootings. *See generally* https://policescorecard.org/va/police-department/hopewell.

102.    On and for some time before December 18, 2018 (and continuing to the present date), the Defendants deprived MS. DECARLO and the DECEDENT of the rights and liberties secured to them by the Fourth and Fourteenth Amendments to the United States Constitution, in that said defendants and their supervising and managerial employees, agents, and representatives, acting with gross negligence and with reckless and deliberate indifference to the rights and liberties of the public in general, and of MS. DECARLO and the DECEDENT, and of persons in their class,

situation and comparable position in particular, knowingly maintained, enforced and applied an official recognized custom, policy, and practice of:

(a)    Employing and retaining as police officers and other personnel, including DETECTIVE LIST and DOE(S) 1 – 5 whom the CITY, at all times material herein knew or reasonably should have known had dangerous propensities for abusing their authority and for mistreating citizens by failing to follow written CITY Police Department policies and/or General Orders;

(b)    Of inadequately supervising, training, controlling, assigning, and disciplining CITY Police Officers, and other personnel, who Defendant CITY knew or in the exercise of reasonable care should have known had the aforementioned propensities and character traits;

(c)    By failing to adequately train officers, including DETECTIVE LIST, and failing to institute appropriate policies, regarding the use of excessive force, including deadly force;

(d)    By not removing DETECTIVE LIST from patrol duties the first time he killed someone and by failing to properly determine whether DETECTIVE LIST had a propensity to kill rather than using less lethal means;

(e)    By having and maintaining an unconstitutional policy, custom, and practice of using excessive force, including deadly force, which is also demonstrated by inadequate training regarding these subjects.  The policies, customs, and practices of the CITY were done with a deliberate indifference to individuals' safety and rights;

(f)    Of totally inadequately training CITY Police Officers, including DETECTIVE LIST, by creating and implementing procedures allowing for and promoting the use of excessive deadly force by officers in unwarranted and unjustified circumstances;

15

(g)     Of totally inadequately training CITY Police Officers, including DETECTIVE LIST and/or DOE(S) 1 – 5, with respect to timely summoning or providing timely medical attention to gunshot victims, who are bleeding profusely and/or have obvious serious injuries;

(h)     Of totally inadequately training CITY Police Officers, including DETECTIVE LIST and/or DOE(S) 1 – 5, with respect to timely summoning the CITY's Crisis Management negotiators when the DECEDENT was in obvious mental distress, anxiety and/or disorder and not posing a threat to anyone else, including DETECTIVE LIST; and

(i)     Other failures yet to be discovered.

103.    The CITY, together with various other officials, whether named or unnamed, had either actual or constructive knowledge of the deficient policies, practices and customs alleged in the paragraphs above.  Despite having knowledge as stated above the CITY condoned, tolerated and through actions and inactions thereby ratified such policies.  Said defendant also acted with deliberate indifference to the foreseeable effects and consequences of these policies with respect to the constitutional rights of the DECEDENT, MS. DECARLO, and other individuals similarly situated.

104.    By perpetrating, sanctioning, tolerating and ratifying the outrageous conduct and other wrongful acts, the CITY, through its employees, officials and/or agents, acted with an intentional, reckless, and callous disregard for the life of the DECEDENT, and the DECEDENT's and MS. DECARLO's constitutional rights.  Such actions were willful, wanton, oppressive, malicious, fraudulent, and extremely offensive and unconscionable to any person of normal sensibilities.

97.     Furthermore, the policies, practices, and customs implemented and maintained and

16

still tolerated by the CITY, through its employees, officials and/or agents, were affirmatively linked to and were a significantly influential force behind the injuries of the DECEDENT and MS. DECARLO.

105.    By reason of the aforementioned acts and omissions, MS. DECARLO was caused to incur funeral and related burial expenses, and loss of financial support.

106.    By reason of the aforementioned acts and omissions, MS. DECARLO has suffered loss of love, companionship, affection, comfort, care, society, and future support.

107.    Accordingly, the CITY is liable to MS. DECARLO for compensatory damages under 42 U.S.C. § 1983.

108.    MS. DECARLO seeks wrongful death and survival damages under this Count.

109.    MS. DECARLO also seeks attorney fees under this Count.

## COUNT VI

### Municipal Liability – Failure to Train (42 U.S.C. § 1983)

110.    MS. DECARLO repeats and re-alleges the allegations in paragraphs 1 through 102 of her Complaint as if set forth verbatim.

111.    While acting under the color of state law and within the course and scope of his employment as a police officer for the CITY police department, DETECTIVE LIST fatally shot the DECEDENT. The DECEDENT was walking away from DETECTIVE LIST when he shot her. She did not pose a threat to him or to anyone else.

112.    DETECTIVE LIST deprived the DECEDENT of her rights and liberties secured to her by the Fourth and Fourteenth Amendments, including her right to be free from unreasonable search and seizure.

113.    On and for some time before December 18, 2018 (and continuing to the present date), the training policies of the defendant CITY police department were not adequate to train its police officers, including but not limited to, DETECTIVE LIST, with regards to using deadly force.  As a result, CITY police officers, including DETECTIVE LIST, are not able to handle the usual and recurring situations with which they must deal, including making contact with individuals who are walking down the street in a non-threatening manner.

114.    The Defendant CITY police department was deliberately indifferent to the known or obvious consequences of its failure to train its police officers, including DETECTIVE LIST, adequately with regards to using deadly force.  This inadequate training includes failing to teach officers to give a verbal warning when feasible prior to using deadly force, to give commands when feasible prior to using deadly force, to take cover when the officers believe an individual is armed, to follow local and national standards, to announce themselves as police and to use less than lethal options, prior to resorting to the use of deadly force.

115.    The CITY was aware that failure to implement some sort of training with regards to their officers' use of deadly force and dealing with suspects, including suspects carrying purses and guns in their hands, that would result in continuing to have numerous unreasonable shootings involving officers of individuals annually.

116.    The failure of the Defendant CITY police department to provide adequate training with regards using deadly force, caused the deprivation of MS. DECARLO's rights by DETECTIVE LIST. In other words, the CITY's failure to train is so closely related to the deprivation of MS. DECARLO's rights as to be the moving force that caused the ultimate injury.

117.    By failing to provide adequate training to CITY's police officers, including

DETECTIVE LIST, the CITY, through its officials, employees and/or agents, acted with an intentional, reckless, and callous disregard for the life of the DECEDENT, and the DECEDENT's and Ms. DECARLO's constitutional rights.

118.    By reason of the aforementioned acts and omissions, MS. DECARLO was caused to incur funeral and related burial expenses, and loss of financial support.

119.    By reason of the aforementioned acts and omissions, MS. DECARLO has suffered loss of love, companionship, affection, comfort, care, society, and future support.

120.    Accordingly, the City is liable to MS. DECARLO for compensatory damages under 42 U.S.C. § 1983.

121.    MS. DECARLO seeks wrongful death and survival damages under this claim.

122.    MS. DECARLO also seeks attorney fees under this Count.

**COUNT VII**

**False Imprisonment (Virginia Common Law)**

123.    MS. DECARLO repeats and re-alleges the allegations in paragraphs 1 through 123 of her Complaint as if set forth verbatim.

124.    DETECTIVE LIST, while working as a police officer for the CITY, and acting within the course and scope of his duties, intentionally deprived the DECEDENT of her freedom of movement by use of force, threats of force and unreasonable duress when he shot and killed the DECEDENT. DETECTIVE LIST intentionally shot at DECEDENT in order to detain her.  He also detained the DECEDENT without reasonable suspicion.   There was an attempt by DETECTIVE LIST to arrest the DECEDENT without probable cause.

125.    The DECEDENT did not knowingly or voluntarily consent to her detention or

attempted arrest. Upon information and belief, the DECEDENT did not feel that she was free to leave as she lay dying on the ground.

126.   By shooting and killing the DECEDENT, DETECTIVE LIST deprived the DECEDENT, who was carrying a purse and a gun, of her liberty without justification. Furthermore, DETECTIVE LIST did not have probable cause to believe that the DECEDENT, specifically, had committed any crime.

127.   The conduct against the DECEDENT by DETECTIVE LIST by shooting her was the sole cause of death.

128.   The CITY is vicariously liable for the wrongful acts of DETECTIVE LIST.

129.   DETECTIVE LIST's conduct was malicious, wanton, oppressive, and accomplished with a conscious disregard for the rights of the DECEDENT, entitling MS. DECARLO to an award of exemplary and punitive damages.

130.   MS. DECARLO is seeking both survival and wrongful death damages under this Count.

<u>**COUNT VIII**</u>

**Battery (Virginia Common Law)**

130.   MS. DECARLO repeats and re-alleges the allegations paragraphs 1 through 129 of her Complaint as if set forth verbatim.

131.   DETECTIVE LIST, while working as a police officer for the CITY Police Department, and acting within the course and scope of his duties, intentionally shot and killed the DECEDENT. Furthermore, the DECEDENT did not pose a threat to DETECTIVE LIST or anyone else as she was walking down the street in a non-threatening manner.

132.   DETECTIVE LIST did not give any verbal warning or commands before shooting the DECEDENT.  The use of deadly force was also unreasonable because there were clearly less than lethal options available.

133.   As a result of DETECTIVE LIST's actions, the DECEDENT suffered severe mental and physical pain and suffering, loss of enjoyment of life and ultimately died from her injuries and lost earning capacity.

134.   DETECTIVE LIST had no legal justification for using deadly force against the DECEDENT and his use of force while carrying out his officer duties was an unreasonable use of force, especially since the DECEDENT was walking down the street in a non-threatening manner.

135.   As a direct and proximate result of DETECTIVE LIST's conduct as alleged above, MS. DECARLO suffered extreme and severe mental anguish and pain and has been injured in mind and body.  She also has been deprived of the life-long love, companionship, comfort, support, society, care and sustenance of the DECEDENT, and will continue to be so deprived for the remainder of her natural life.

136.   MS. DECARLO is also claiming funeral and burial expenses and a loss of financial support.

137.   The City is vicariously liable for the wrongful acts of DETECTIVE LIST.

138.   DETECTIVE LIST's conduct was malicious, wanton, oppressive, and accomplished with a conscious disregard for the rights of the DECEDENT, entitling MS. DECARLO to an award of exemplary and punitive damages.

139.   MS. DECARLO brings this claim both individually and as successor-in-interest to the DECEDENT, and seeks both survival and wrongful death damages.

21

## COUNT IX

### Gross Negligence (Virginia Common Law)

140.    MS. DECARLO repeats and re-alleges the allegations paragraphs 1 through 139 of her Complaint as if set forth verbatim.

141.    The City had a duty to properly hire, train, supervise, discipline, and—where necessary— terminate its personnel in order to protect the public against dangers reasonably likely to result from the absence of proper hiring, supervision, and firing.

142.    The actions and inactions of the Defendants were grossly negligent, including but not limited to:

(a)    the failure to properly hire individuals, including DETECTIVE LIST, who are not overly aggressive and who do not have a propensity to kill;

(b)    the failure to properly and adequately train employees, including DETECTIVE LIST, with regards to the use of force, including deadly force;

(c)    the failure to properly and adequately assess the need to detain, arrest, and use force, including deadly force against DECEDENT;

(d)    the negligent tactics and handling of the situation with the DECEDENT, including pre-shooting negligence, including specifically the failure to summon the CITY's Crisis Management negotiators;

(e)    the negligent detention, and use of force, including deadly force, against the DECEDENT;

(f)    the failure to provide and or summon prompt medical care to the DECEDENT;

(g)    shooting someone who was walking down the street in a non-threatening manner

and not posing a threat to anyone;

(h)      the failure to give a verbal warning or any kind of command prior to shooting and/or exercising deadly force;

(i)      the failure to properly train and supervise employees, both professional and non-professional, including DETECTIVE LIST, with respect to the use of excessive force and the summoning of medical aid for shooting victims; and

(j)       the failure to properly provide training consistent with local and national standards.

143.    As a direct and proximate result of defendants' conduct as alleged above, and other undiscovered negligent conduct, the DECEDENT was caused to suffer severe pain and suffering and ultimately died and lost earning capacity.  Furthermore, as a direct and proximate result of defendants' conduct as alleged above, MS. DECARLO suffered extreme and severe mental anguish and pain and has been injured in mind and body.  She also has been deprived of the life-long love, companionship, comfort, support, society, care and sustenance of the DECEDENT, and will continue to be so deprived for the remainder of her natural life.  MS. DECARLO is also claiming funeral and burial expenses and a loss of financial support under this claim.

144.    The CITY is vicariously liable for DETECTIVE LIST's actions under this claim.

145.    MS. DECARLO brings this claim individually and as successor-in-interest to the DECEDENT seeking both survival and wrongful death damages.

## PRAYER FOR RELIEF

WHEREFORE, MS. DECARLO prays for the following relief:

A.      For compensatory damages in excess of $25,000,000.00, including both survival damages and wrongful death damages under federal and state law, in the amount to be proven at

trial;

B. For funeral and burial expenses, and loss of financial support;

C. For punitive damages in the amount of $350,000.00;

D. For interest;

E. For reasonable costs of this suit and attorneys' fees; and

F. For such further other relief as the Court may deem just, proper, and appropriate.

## DEMAND FOR JURY TRIAL

Ms. DECARLO demands a trial by jury on all issues within this Complaint.

DATED: September 16, 2021

Respectfully submitted,

EMILY GRANT DECARLO,
ADMINISTRATRIX OF THE ESTATE OF
ANGEL DECARLO

By Counsel

_____/s/_____
Donald J. Gee, Esq. (VSB No. 26011)
Vanessa E. Hicks, Esq. (VSB No. 30077)
Brian K. Telfair, Esq. (VSB No. 40516)
**The Gee Law Firm, P.C.**
4719 Nine Mile Road
Richmond, VA  23225
(804) 226-4111        telephone
(804) 864-5292        facsimile
*Counsel for Plaintiff*